(48 App. Div. 408.)

PEOPLE v. RICKARD.

(Supreme Court, Appellate Division, Third Department. March 7, 1900.)

1. FOOD—ADULTERATED MILK—ACTION FOR PENALTY—EVIDENCE.
    In a prosecution for the sale of adulterated milk it appeared that the test on which the prosecution was based was made on milk that had stood in the can overnight, and that, after the milk had been stirred up, a sample was taken therefrom, and put into two bottles, one of which was delivered to defendant, and the other kept by the state. Held, that evidence offered by defendant that by the Babcock test the milk delivered to him showed a percentage of 3.22 butter fats, as against the showing of only 2.61 per cent. by the chemical test of the milk retained by the state, was admissible on the question whether the milk taken from the can by the state was a fair sample of all the milk in the can.

**2. SAME—VERDICT.**
> In a prosecution for the sale of adulterated milk, evidence that the milk tested had stood in the can overnight, and that, after it was stirred up, a sample was taken therefrom, and put into two bottles, one of which was given to defendant and the other retained by the state, and that the chemical test made by the state showed a percentage of only 2.61 butter fats, while by the Babcock test made by defendant it showed 3.22 per cent., is sufficient to support a verdict for defendant under an instruction that, if the milk in the bottle tested by the state was a fair sample of all the milk in the can, then defendant had sold adulterated milk, and was liable for the penalty sought to be recovered.

Appeal from trial term.

Action by the people against Bernard Rickard to recover a penalty for the sale of adultered milk. From a judgment for defendant, and from an order denying a new trial, the people appeal. Affirmed.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

L. W. Baxter, for the People.
L. F. Raymond, for respondent.

PARKER, P. J. This action is brought to recover a penalty from the defendant for selling adulterated milk to a creamery in Delaware county on the 11th day of February, 1898. From the plaintiffs' evidence it appeared that upon the morning of that day the defendant delivered a 40-quart can of milk to the creamery that had been milked the evening before, and had stood all night in such can; that, when delivered, such milk was stirred up in the can, and a sample taken therefrom, and put into two small bottles, one delivered to defendant, and one kept by the plaintiffs, from which a chemical test was made; that the milk so tested fell considerably below the standard required by statute in butter fats and in solids, and overran in the percentage of water thereby allowed. The defendant gave some evidence tending to show that the milk was not thoroughly stirred in the can when the sample to be tested was taken therefrom, and also was allowed to show that the milk in the bottle left with him showed, by the Babcock test, a percentage of 3.22 of butter fats. By the chemical test made by the plaintiffs the milk in the bottle retained by them showed only 2.61 per cent. of butter fats. The jury were instructed by the court that, if the milk in the bottle tested by the plaintiffs was a fair sample of all the milk in the can delivered by the defendant, and if that test was correctly made, then the defendant had sold adulterated milk, and was liable for the penalty sought to be recovered. This charge was not excepted to by plaintiffs, and it seems to be a correct statement of the law controlling the case. The jury found a verdict for the defendant, and from the judgment entered thereon, and from the judge's order denying a new trial, this appeal is taken.

The appellants complain that it was error to allow, under their objection, proof that the milk in the bottle left with defendant showed a percentage of 3.22 butter fats by the Babcock test. Their argument seems to be that the accuracy of their chemical test can

be discredited only by a chemical test. The decisions to which we are referred by the appellants' counsel do not sustain that proposition, and I have not been able to find any that does. But it is not necessary to decide that question here, for, in my opinion, such evidence was admissible as bearing on the question whether the milk taken from the can was a fair sample of all the milk in the can. That milk had stood in the can overnight, and confessedly the cream, containing the greater part of the butter fats, had risen to the top. Whether, by stirring it up, the cream could be so thoroughly mixed, and all the milk therein so completely restored to its natural condition, that a sample taken would fairly show, upon a chemical test thereof, the real percentage of solids, fats, and water contained in the whole can, was a question of fact for the jury to determine from the evidence before them. If a test of the milk in one bottle did not correspond with a test of the milk in the other, it would seem that the sample taken was not to be relied upon as a fair sample of the whole; and the case does not disclose that the Babcock test is not as accurate a one by which to ascertain the butter fats in milk as any other test. The Babcock test is a well-known and universally accepted method of ascertaining the butter fats in milk; and, if the butter fats in the one bottle exceeded those in the other by so large a figure as appears in this case, it was a fact to be submitted to the jury to aid them in determining whether a sample taken from the can which would show so great a difference when divided into two parts was a fair sample of the whole can. For this reason I conclude that it was not error to receive the evidence complained of. Upon the whole case we cannot say that the evidence does not warrant the conclusion to which the jury seem to have arrived,—that the sample taken was not a fair one of all the milk in the can, and therefore the verdict must be sustained.

Judgment and order affirmed, with costs. All concur.